UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Lateisha Finney, on behalf of, B.R.[1], a minor,

               Plaintiff,

                                          **Hon. Hugh B. Scott**

        v.                            13-CV-00543-A

                                          **Report
and
Recommendation**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

_____

     Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 9 and 12).

## INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that Plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income ("SSI") benefits.

## PROCEDURAL BACKGROUND

     Plaintiff Lateisha Finney ("Plaintiff") filed an application for SSI benefits on behalf of

her son B.R. ("Claimant"), who was 10 years old, on June 14, 2010. That application was denied

initially and on reconsideration. Plaintiff appeared before an Administrative Law Judge ("ALJ"),

---

[1] Fed. R. Civ. P. 5.2(a)(3) states that unless otherwise ordered by the court, a minor's name should be replaced with his initials.

who considered the case *de novo* and concluded, in a written decision dated March 5, 2012, that Claimant was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on May 2, 2013, when the Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently commenced this action (Docket No. 1). The parties have moved for judgment on the pleadings. The motions were argued and submitted on papers (Docket No. 8).

## FACTUAL BACKGROUND[2]

### Medical

On June 2, 2010, B.R. was admitted to the emergency room ("ER") at the Kaleida Health Center after he had been in a fight at school. (R. 203). The examining physician, Saikat Pal, M.D., noted that B.R. had been tripped by another student and hit his head. (R. 203). Dr. Pal diagnosed behavioral problems and a head injury. (R. 205). B.R. was released on the same day and advised to see Dr. Wayan McCoy. (R. 207).

On June 14, 2010, B.R. saw Dr. McCoy, of Lifetime Health Medical Group ("Lifetime Health"). (R. 264). Plaintiff reported to Dr. McCoy that B.R. had behavioral problems which began one year prior, and eventually culminated in the altercation at school that sent B.R. to the ER. (R. 264). B.R.'s physical examination was unremarkable, and Dr. McCoy prescribed Adderall, 20 mg. (R. 265).

On July 8, 2010, B.R. saw Stephanie Fretz, M.D., also associated with Lifetime Health. (R. 262-63). Dr. Fretz noted that B.R. had been on medication for one month. (R. 262). Plaintiff reported to Dr. Fretz that the medication was working well, B.R. was much calmer, and there

---

[2] References noted as "(R.___)" are to the certified record of the administrative proceedings.

was a notable difference in behavior when he ran out of medication. (R. 262). Plaintiff stated that

B.R.'s tutor noted an improvement in his behavior on medication, particularly that he was more

focused. (R. 262). Plaintiff did report that B.R. initially had trouble sleeping when he began his

medication, but did not have trouble sleeping at the time of the appointment. (R. 262). Dr. Fretz

continued B.R. on medication and instructed Plaintiff to increase B.R.'s caloric intake. (R. 263).

On August 6, 2010, B.R. returned to Dr. McCoy for a follow-up examination. (R. 260-

61). Dr. McCoy found that B.R. was doing well on his dosage of Adderall, and the physical

examination was unremarkable. (R. 259-60). Dr. McCoy noted that B.R.'s ADHD had improved

and he renewed B.R.'s medication. (R. 260).

On August 25, 2010, B.R. was examined by Sandra Jensen, Ph.D., at the request of the

Commissioner. (R. 280). Plaintiff told Dr. Jensen that B.R. was defiant, lost his temper easily,

and had difficulty paying attention. (R. 280). Plaintiff reported that B.R. was taking Adderall, 20

mg, and did not mention any side effects. (R. 281). Plaintiff also stated that counseling with a

mental health specialist had been recommended, but she did not follow through. (R. 280).

Dr. Jensen noted that throughout the examination, B.R. was responsive and cooperative.

(R. 281). His manner of relating and his social skills were age-appropriate. (R. 281). B.R.

reported that he had friends. (R. 283). He stated that his relationship with his brother was

strained, but his relationship with his sister was good. (R. 283). Plaintiff reported that B.R. was

able to bathe, dress himself, and feed himself, and did chores, although he sometimes needed

reminders. (R. 282).

Dr. Jensen also observed that B.R.'s speech was normal, his intelligibility was good, his

thought process was goal-directed, his mood was neutral, and his sensorium was clear. (R. 282).

B.R. was fully oriented to person, place, and time. (R. 282). His attention and concentration were

3

intact, and he was able to do simple calculations and count back from 10. (R. 282). His recent and remote memory was also intact, as he was able to recite three objects immediately and three objects after one minute. (R. 282).

Additionally, Dr. Jensen administered the Wechsler Intelligence Scale for Children, Fourth Edition, ("WISC-IV") intelligence test. (R. 287). B.R. scored 63 in verbal comprehension, 96 in perceptual reasoning, 86 in working memory, and 70 in processing speed, with a full scale IQ of 67. (R. 287). Dr. Jensen opined that the results should be treated with some caution because there was such a large span between the verbal and perceptual reasoning scores. (R. 287-88). Based on that span, she believed that the verbal score was likely not an accurate reflection of B.R.'s ability, and that the full scale score probably underestimated his current intelligence. (R. 288).

Dr. Jensen concluded that B.R. had a mild limitation in attending to, following, and understanding age-appropriate directions; completing appropriate tasks; maintaining appropriate social behavior; responding appropriately to changes in environment; learning in accordance with cognitive functioning; asking questions/requesting assistance in an age-appropriate manner; being aware of dangers and taking precautions; and interacting adequately with adults and peers. (R. 283, 288-89).

On September 10, 2010, T. Andrews, Ph.D., a State agency psychologist, reviewed the medical evidence in the record, and assessed that B.R.'s impairments did not meet a Listing contained in the Commissioner's regulations. (R. 291). Dr. Andrews assessed that B.R. had a marked limitation in the domain of interacting and relating with others; a less than marked limitation in the domains of acquiring and using information, attending and completing tasks,

4

and caring for himself and others; and no limitation in the domains of moving about and manipulating objects, and health and physical well-being. (R. 296-97).

On October 14, 2010, B.R. returned to Dr. Fretz for a follow-up examination. (R. 318-19). Plaintiff admitted that B.R. had been out of medications since late September. (R. 318). Dr. Fretz noted that Plaintiff never picked up the medication that was prescribed for B.R. on September 30. (R. 318). Plaintiff reported that B.R.'s school wanted him to be on medication, and he was attending school in a regular classroom but might need extra help. (R. 318). B.R. was able to get his homework done, but the school complained about his fighting. (R. 318).

On October 15, 2010, B.R. returned to Dr. McCoy, where Plaintiff reported that B.R.'s behavior had worsened since the last visit. (R. 313, 318). Dr. McCoy's notes did not state whether he knew that B.R. had not been taking Adderall for a few weeks at the time of his appointment. Dr. McCoy increased B.R.'s Adderall dosage to 30 mg. (R. 314).

On January 26, 2011, B.R. returned to Dr. McCoy for a follow-up examination. (R. 309-10). Plaintiff reported that B.R. had been doing well, until the day before when he fought at school. (R. 309). Plaintiff did admit, however, that she had again allowed B.R.'s medications to run out. (R. 309). B.R. was suspended from school and would only be allowed back if he brought in his medication. (R. 309). Dr. McCoy renewed B.R.'s prescription for Adderall. (R. 307).

On August 4, 2011, B.R. returned to Dr. Fretz. (R. 307-8). Plaintiff confessed that B.R. had not taken medication since January 2011. (R. 307). She stated that he missed appointments and medications because she lost her car. (R. 307). She also claimed that the school had reported a change in his behavior since he was off his medications, and wanted him to resume them before he returned to school in September. (R. 307). She stated that when he was on medication he focused better and was not fighting with others. (R. 307). Plaintiff also mentioned that B.R.

5

had finished the fourth grade but was not sure if he would be going into fifth grade, or repeating fourth grade in September. (R. 307). His teacher thought B.R. could advance academically, but it was up to Plaintiff to decide if he should be held back. (R. 307). Dr. Fretz renewed B.R.'s prescription for Adderall. (R. 307).

### Vocational & School

School records reveal that B.R. was suspended from school on multiple occasions from 2008 to June 2010 for his behavior, including insubordination and fighting. (R. 213, 216-56).

On July 9, 2010, Plaintiff completed a form about B.R.'s ability to function. (R. 108-17). Plaintiff reported that she was unsure if: B.R.'s ability to communicate was limited; B.R.'s ability to progress in learning was limited; B.R.'s impairment affected his behavior with others; and B.R.'s ability to take care of himself and his personal needs was limited. (R. 111-14). Plaintiff did note that B.R. had difficulty paying attention, including finishing what he started, and completing chores and homework. (R. 116).

In July 2010, the Social Security Administration ("SSA") contacted the Buffalo Board of Education, but no medical records were available. (R. 303). In July 2010, the SSA also contacted the School of Technology #6, but it did not respond to the SSA's requests for information. (R. 303). On August 29, 2011, the ALJ re-contacted Buffalo Public Schools for its records. (R. 317). The school responded that B.R. had not been enrolled in an Individualized Education Program ("IEP"), and no record or history had been found. (R. 316). Additionally, at the hearing, the ALJ inquired whether Plaintiff wanted to submit additional evidence. (R. 40). Plaintiff responded that she submitted all available evidence, and was not anticipating any more reports. (R. 40).

On November 23, 2011, Ms. Nancy Munson Ellis, B.R.'s teacher, completed a teacher's questionnaire. (R. 174-81). At the time of the questionnaire, Ms. Ellis had known B.R. for three months. (R. 174). She discussed B.R.'s abilities in several sub-areas, grouped under the domains of functioning, by indicating whether he had no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem. (R. 175-81). Ms. Ellis found B.R. had a very serious problem in attending and completing tasks, interacting and relating with others, and some sub-areas of caring for himself. (R. 176-79). Ms. Ellis found B.R. had a serious problem in the domain of acquiring and using information. (R. 175). Ms. Ellis found B.R. had no limitation in the domain of moving about and manipulating objects, and in some sub-areas of caring for himself. (R. 178-79). In the last domain of health and physical well-being, Ms. Ellis stated that she was unaware of any conditions that impacted B.R.'s health and well-being. (R. 198).

At the hearing, Plaintiff testified that B.R. had had behavioral problems through 2009 and 2010, which led to numerous suspensions from school. (R. 47, 50). Plaintiff reported that B.R. was prescribed Adderall in June 2010, which worked well. (R. 48). Plaintiff admitted that she allowed some of B.R.'s medications to run out in January 2011 because she was ill, but later said she had never been aware that she needed to refill the medication. (R. 54-55). Plaintiff also stated that B.R. did not take his medication from January 2011 to August 2011 because it was making him sick. (R. 54). Plaintiff reported that B.R. had recently changed schools, because his prior school could not control him. (R. 49, 53). He was suspended in his new school as well. (R. 49).

The ALJ also took B.R.'s testimony at the hearing. (R. 41-43). B.R. said he was in fifth grade, and he liked gym and music, but not art. (R. 41-43). He had two friends, and got into fights with other children at school, but had not been in any fights this year. (R. 41-42). B.R. had

friends outside of school, with whom he played football and basketball. (R. 44-45). He had two siblings, and sometimes he did not get along with his brother. (R. 43).

## **STANDARD OF REVIEW**

The only issue to be determined by this Court is whether the ALJ's decision that Plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938)).

To qualify for Social Security Insurance and disability insurance benefits under the Social Security Act, a child under 18 must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

There is a three-step evaluation to determine disability for children: (1) whether the child is engaged in work that constitutes "substantial gainful activity"; (2) whether the child suffers from at least one "severe" medically determinable impairment that causes "more than minimal functional limitations"; and (3) whether the impairment is a medical or functional equivalent of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See 20 C.F.R. § 416.924(b)-(d).

Functional equivalence is demonstrated only if the child exhibits "extreme" limitation in one, or "marked" limitation in two, of the following six "domains" established by the regulations: (1) acquiring and using information; (2) attending and completing tasks; (3)

interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

yourself and others; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation must "seriously" interfere with a claimant's ability to

independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme"

limitation is reserved for only the worst limitations that "very seriously" interfere with a

claimant's ability to independently imitate, sustain, or complete activities. 20 C.F.R.

§ 416.926a(e)(3).

## DISCUSSION

In applying the three-step framework to this case, this Court finds that the first two steps

are not in dispute. The Court will focus on the third step.


### The ALJ did not fail to properly consider Medical Listing 112.05D.

Plaintiff argues that B.R.'s low full-scale IQ score combined with his ADHD learning

disability qualify him for SSI under Medical Listing 112.05D, "intellectual disability." The ALJ

decided that B.R. did not meet Listing 112.05D because no treating or examining physician

mentioned findings equivalent in severity to the criteria of any listed impairment. Moreover, the

ALJ rebuts the Plaintiff's argument that B.R. is disabled because of his full scale IQ of 67. The

ALJ disregarded B.R.'s IQ score because Dr. Jensen stated that the test results should be treated

with caution due to the large span between B.R.'s verbal and perceptual reasoning scores, and

therefore his full scale IQ was probably an underestimate of his current intellectual functioning.

To the extent that Dr. Jensen's report weighs against Plaintiff's argument, Plaintiff asks

the Court to disregard the report as internally inconsistent. Plaintiff considers the report to be

inconsistent because Dr. Jensen reported that the test was valid, but opined in her notes that it

should be treated with caution, and that B.R.'s full-scale IQ score was likely an underestimate of his functioning. Commissioner responds that B.R.'s impairments did not medically equal the Listing because Dr. T. Andrews, the State agency psychologist who reviewed the evidence in the record, opined that B.R. did not have an impairment that met a Listing.

Medical Listing 112.05D requires that the claimant have both a "valid verbal, performance, or full scale IQ of 60 through 70," and "a physical or other mental impairment imposing an additional and significant limitation of [adaptive] function." 20 C.F.R. Pt. 404, Subpt. P, App. 1. A valid IQ score need not be conclusive of intellectual disability where the score is inconsistent with other evidence in the record. Vasquez-Ortiz v. Apfel, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999). See also Davis v. Astrue, No. 7:06-CV-00657 (LEK), 2010 U.S. Dist. LEXIS 73225, at *5 (N.D.N.Y. July 21, 2010) (holding that an ALJ is permitted to reject a claimant's IQ scores as inconsistent with the record as long as he explains his reasons for doing so).

In Ramos v. Astrue, the claimant took the WISC-IV Test and received a composite score of 67. Ramos v. Astrue, No. 11 Civ. 6142 (LTS) (FM), 2013 U.S. Dist. LEXIS 52472, at *39 (S.D.N.Y. Mar. 12, 2013). However, the child's non-verbal skills were far better developed than his verbal skills. Id. Specifically, the distributing doctor determined that the child was capable of performing age-appropriate cognitive tasks, and relating adequately with others. Id. Further, the doctor acknowledged that the results of the IQ test did not adequately summarize the child's overall capabilities because of the significant difference between his verbal and non-verbal skills. Id. Treating physicians further opined that the child would be capable of accomplishing appropriate vocational and educational goals. Id. The court held there was substantial evidence upon which the ALJ properly could have disregarded the WISC-IV score. Id.

The current case is very similar to Ramos, which this Court finds persuasive. B.R.'s composite score on the WISC-IV Test was a 67, and he had a large span between his perceptual reasoning and verbal scores. Dr. Jensen stated in her notes that the results should be treated with caution because there was such a large span between B.R.'s verbal and perceptual reasoning scores. Also, Dr. Jensen noted that B.R.'s full scale IQ score probably was an underestimate of his current intellectual functioning. B.R.'s treating physician, Dr. McCoy, stated that he would do better on medication.

Even if the Court were to assume that B.R.'s WISC-IV scores were an accurate representation of his abilities, B.R. still would not have met Listing 112.05D because he did not demonstrate the deficits in adaptive functioning required by the listing. See also Talavera v. Astrue, 697 F.3d 145, 148 (2d Cir. 2012) ("[T]o be considered mentally retarded, [the plaintiff] must separately establish deficits in her cognitive and adaptive functioning."). Adaptive functioning refers to the individual's acquisition of mental, academic, social and personal skills as compared with unimpaired individuals of the same age. Id. Here, the evidence shows that B.R. was able to cope. B.R. was capable of dressing, bathing, grooming, and doing homework at an age-appropriate level. He had friends at school and played sports. These activities put B.R. above the deficits listed in 112.05D. Therefore, there was substantial evidence to support the ALJ's finding that B.R. did not have the deficits in adaptive functioning necessary to meet the Listing 112.05D for "intellectual disability."

**Substantial evidence supports how the ALJ evaluated and weighed the medical opinions of the consultative psychologist and the state agency review psychologist.**

Next, Plaintiff alleges that the ALJ was not significantly clear in explaining how he analyzed the medical opinions in the record. Specifically, "the ALJ failed to use the statutory 6

factors in evaluating the opinion of the consultative psychologist Dr. Jensen and State Agency review psychologist T. Andrews. There were no treating physician opinions in the record." (Pl. Br. 15). Additionally, Plaintiff argues that the ALJ's decision to give significant weight to Dr. Jensen's report was in legal error because the ALJ only indicated one factor to weigh Dr. Jensen's report. According to 20 C.F.R. § 416.927(d), the six factors used in evaluating consultative psychologists are: (1) examining relationship; (2) treatment relationship, including the length of the relationship, and the nature and extent of the relationship; (3) supportability, considering medical signs and laboratory findings; (4) consistency; (5) specialization; and (6) other factors that may support or contradict the opinion.

"A consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination." See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). When the evidence of the record permits us to pick up the rationale of an ALJ's decision, the ALJ is not required to comment on every piece of testimony presented to him, or to describe why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). The court may look at other parts of the ALJ's decision, and to clearly credible evidence in finding the decision was supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982). The ALJ may rely not only on what the record says, but also on what the record does not say. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

In Berry, the ALJ simply reviewed the material medical evidence and concluded that the claimant was not disabled. Berry, 675 F.2d at 468. The ALJ's decision did not set forth a specific rationale in support of the conclusion. Id. Nonetheless, judgment was affirmed in the favor of the Commissioner. Id. In Walters v. Astrue, the court also found that the ALJ's determination was

12

supported by substantial evidence, and was not the product of legal error. <u>Walters v. Astrue</u>, No.

10-CV-01038T, 2013 U.S. Dist. LEXIS 58711, at *16 (W.D.N.Y. Apr. 24, 2013). The

consultative examiner's assessment of the claimant's physical limitation was consistent with

other medical evidence in the record. <u>Id.</u> at *11-*12.

Here, the ALJ set forth a rationale in his decision that multiple documents in the record

support. The ALJ gave significant weight to Dr. Jensen's report, which found only mild

limitations in all categories. The record also contains evaluations from Dr. Fretz, and Dr.

McCoy, who agree that B.R. responded well to medication, and his limitations were less severe

when he followed medication directives. Additionally, Dr. Andrews's report shows only a

marked limitation in one category, with mild or no limitation in the remaining categories.

Together, the record is consistent with an assessment of the six statutory factors that would

establish that B.R. does not meet the necessary criteria. So long as the record supports what an

explicit statutory analysis would have been, a failure to itemize that analysis will not change the

Commissioner's outcome.  The ALJ did not fail to evaluate and weigh medical opinions of

consultative psychologist and the state agency review psychologist.


**Substantial evidence supports the ALJ's decision to disregard B.R.'s teacher
evaluation as it is inconsistent with the record.**

Plaintiff additionally alleges that Dr. Jensen's evaluation that B.R. has only mild

limitations is not consistent with the record as a whole, or with B.R.'s teacher report.

Specifically, Plaintiff contends that Dr. Jensen's report that B.R. had mild limitations "[is] not

consistent with the first hand and up close observations of B.R.'s teacher, Ms. Ellis. She

observed very serious problems at school in the three domains of 'Acquiring and Using

Information,' 'Attending and Completing Tasks,' and 'Interacting and Relating with Others.'" (Pl. Br. 16).

Plaintiff's argument requires a review of the rules governing teacher reports. "Non-medical sources" includes school teachers. SSR 06-03P, 2006 WL 2329939 (August 9, 2006). Information from these "other sources," on its own, cannot establish the existence of a medically determinable impairment. Id. Instead, there must be evidence from an "acceptable medical source" for this purpose. Id. "Other source" evidence is evaluated using factors including: how long the source has known and how frequently the source sees the claimant; and how consistent the opinion is with other evidence. Id. "Other source" opinions need not be assigned controlling weight. Walters v. Astrue, 2013 U.S. Dist. LEXIS 58711, at *16. 20 C.F.R. § 416.913(a). The ALJ has the discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him. Walters, 2013 U.S. Dist. LEXIS 58711, at *16-*17.

In Walters, the other source's mental assessment was inconsistent with progress notes during that time-period from the claimant's treating psychiatrists. Id. at *18. Progress reports indicated that the plaintiff had maintained a similar level of functioning, had returned to school, and was generally stable and improved with medication and therapy. Id. The court determined the ALJ did not err in declining to afford greater weight to the opinion of the claimant's therapist. Id. at *15-*16.

The teacher questionnaire filled out by Ms. Ellis was inconsistent with progress notes and previous updates that B.R. was doing well on medication. Both Dr. Jensen and Dr. T. Andrews believed B.R. did not have any "extreme" limitations. Not only did B.R.'s doctors report that B.R. was doing well in school while he was on medication, but B.R.'s tutor, school administrators, and mother all expressed similar opinions throughout the medical record.

14

Additionally, Ms. Ellis had only known B.R. for three months at the time of her report. On the other hand, B.R.'s doctors noted that he was generally stable and improved with medication. Additionally, both B.R.'s mother and fourth grade teacher thought he was performing well enough in school to advance to the fifth grade.

Under the circumstances, substantial evidence supports giving diminished weight to the teacher report. Therefore, the ALJ was under no obligation to elaborate on the report from Ms. Ellis.

**The ALJ had substantial evidence and acted pursuant to SSR 09-2P and 09-5P in concluding that B.R. had only a marked limitation in the domain of interacting and relating to others.**

Plaintiff alleges that the ALJ did not consider "all the relevant evidence" regarding B.R.'s functioning and did not use SSR 09-5P as a frame of reference. Specifically, Plaintiff states that "the ALJ presumably based this finding directly on Dr. Andrews' opinion of only marked limitations in this domain." (Pl. Br. 19). Plaintiff additionally alleges that B.R. has an "extreme" limitation in the domain of interacting and relating to others, mostly due to B.R.'s history of fighting with other students at school. The ALJ's decision cited a combination of Dr. Jensen's report, B.R.'s school records, and B.R.'s testimony when making the determination in the domain of interacting and relating with others.

The Commissioner argued that the ALJ's finding is consistent with the medical record as a whole, especially with the opinions of both Dr. T. Andrews, who found that B.R. had a "marked" limitation, and Dr. Jensen, who found that B.R. had only a mild impairment in interacting and relating adequately with adults and peers.

SSR 09-2P requires that evidence be evaluated on a longitudinal basis. SSR 09-2P, 2009 WL 396032 (Feb. 18, 2009). It further states that evidence may come from "acceptable medical sources" and from a variety of "other sources." Id. The ALJ may have to make a determination or decision without certain school evidence when they are unable to obtain it. Id.

In the domain of interacting and relating with others, the ALJ will consider how well the claimant initiates and sustains emotional connections with others, develops and uses their native language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i)(1). See also SSR 09-5P, 2009 WL 396026 (Feb. 17, 2009). Examples of limitations include, but are not limited to: having no close friends; avoiding or withdrawing from people the child knows; having difficulty playing sports with rules; or having difficulty communicating with others at an age-appropriate level; having difficulty speaking intelligibly. 20 C.F.R. § 416.926a(i)(3). In addition, the ALJ will consider the effects of treatment (including medications and other treatment) in order to determine functional ability. 20 C.F.R. § 416.924a(b)(9) (2002).

In Brown O/B/O VanOrden, Jr. v. Comm'n, a treating physician opined that although the child had ADHD, he was "doing well" on medication. Brown O/B/O VanOrden, Jr. v. Comm'n, 430 F. Supp. 2d 102, 106 (W.D.N.Y. 2006). The evidence showed that the child had ADHD and was on medication to address his impairment. Id. Additionally, the consultative examiner concluded that the child was capable of maintaining appropriate social behavior, and responding appropriately to changes in the environment. Id. at 104. Substantial evidence supported the ALJ's conclusion that the child's ADHD did not meet, medically equal, or functionally equal the listing. Id. at 106.

This case closely resembles <u>Brown</u>. B.R. was on medication for ADHD. Multiple doctor reports, Plaintiff's testimony, and school information show that B.R. was doing well on his medication. In addition to doing well on medication, B.R. had two friends, and enjoyed gym and playing sports. Dr. Jensen stated that B.R. had only a mild limitation in age-appropriate behavior. Substantial evidence therefore supports the ALJ's conclusion that B.R. does not have an "extreme limitation" in interacting and relating with others.

### The ALJ provided sufficient reasons for the assessment of credibility of Plaintiff and B.R.

Plaintiff alleges that the ALJ did not properly assess the credibility of the witnesses, and the decision did not list specific reasons for the finding on credibility. Additionally, Plaintiff alleges that the ALJ's assessment was not grounded in the actual evidence. The ALJ decision states that after considering the evidence in the record,

> the [claimant's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below.

(R. 26). The ALJ then expounds upon B.R.'s medical visits, as well as school disciplinary records from B.E.S.T. School #6. The Commissioner argues that the ALJ considered B.R.'s treatment, which consisted of medication. The ALJ also noted that Plaintiff allowed B.R. to be non-compliant with his medication.

As a preliminary matter, symptomatology cannot, by itself, be the basis for a finding of disability; there must be medical signs or other findings which show the existence of a medical condition that reasonably could be expected to produce the symptomatology alleged and, when

considered with other evidence, demonstrates that Plaintiff is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929(b). If the symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone (medical signs and laboratory findings), the Commissioner considers other evidence, such as Plaintiff's statements, daily activities, duration and frequency of pain, medication, and treatment. 20 C.F.R. § 416.929(c)(3); SSR 96-7P, 1996 WL 374186 (July 2, 1996).

An ALJ "is required to take the claimant's reports of pain and other limitations into account." 20 C.F.R. § 416.929. However, they are "not require[d] to accept the claimant's subjective complaints without question." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ has discretion when weighing the credibility of the claimant's testimony in relation to other evidence in the record. Id. This requires a two-step process. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. Second, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. Id. If the plaintiff offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir.2010) (summary order) (citing 20 C.F.R. § 404 .1529(c)(3)).

In making a credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations

and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); see also

Meadors, 370 F. App'x at 184. The ALJ is not required to discuss all seven factors in his

decision as long as the decision includes precise reasoning, is supported by evidence in the case

record, and clearly indicates the weight the ALJ gave to the claimant's statements and the

reasons for that weight. Stalling v. Colvin, 11-CV-779, 2013 WL 3713315, at *7 (W.D.N.Y. July

12, 2013) (quoting Snyder v. Barnhart, 323 F. Supp. 2d 542, 547 (S.D.N.Y. 2004). "Because the

ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility,"

his decision to discredit subjective testimony is "entitled to deference" and may not be disturbed

on review if his disability determination is supported by substantial evidence. Hargrave v.

Colvin, 13-CV-6308 MAT, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014).

In Hargrave, following the two-step analysis, the ALJ found that the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms. Id. At

step two, the ALJ found that the Plaintiff's statements "concerning the intensity, persistence and

limiting effects of these symptoms" were not credible. Id. The ALJ did not expressly discuss all

of the credibility factors in his evaluation of credibility, his decision set forth sufficient

reasoning, and was supported by the evidence in the record. Id. Further, treatment notes make

reference to Plaintiff's impairment. Id. However, there is a lack of supporting evidence for the

relevant time period. Id. The court found that the ALJ properly discounted the Plaintiff's

allegations of disabling pain and related symptoms during the relevant time period. Id.

In the present case, the ALJ went through the proper two-step evaluation. The ALJ

determined at step one that B.R.'s medically determinable impairments could reasonably be

expected to cause the alleged symptoms. However, at step two, the ALJ found that the Plaintiff's

statements were not credible. The ALJ then goes on to list relevant medical evidence from Dr.

Fretz, Dr. Jensen, Dr. Andrews, and evidence of claimant's behavior at school. Although the ALJ did not expressly list all of the credibility factors in his evaluation, his decision set forth sufficient reasoning and was supported by evidence of the record. Plaintiff testified at the ALJ hearing that the school said B.R. did better when he was on medication, and that his medication made B.R. ill at times. However, Plaintiff did not mention negative side effects to medication at any of B.R.'s doctor appointments.

This Court thus finds substantial evidence supports the ALJ decision, and the ALJ properly discredited Plaintiff's testimony where it was inconsistent with the record, and the Plaintiff admitted B.R.'s success on his medication.

**The ALJ properly developed the record.**

Plaintiff alleges that there are deficiencies in the record where the ALJ failed to obtain current school reports or to order further IQ examinations. Specifically, Plaintiff refers to IQ and psychological testing done in 2010 at B.R.'s school, and the lack of report cards tracking B.R.'s academic achievement. The Commissioner contends that the ALJ attempted to obtain records on several occasions.

The ALJ has an obligation to make a reasonable effort to develop B.R.'s complete medical history for at least the twelve months preceding the month in which Plaintiff filed his application. 20 C.F.R. § 416.912(d). A reasonable effort to obtain records means an initial request, plus a follow-up request. 20 C.F.R. § 416.912(d). Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of the record. 20 C.F.R. §416.912(e). The ALJ does not have a duty to re-contact a treating physician if the evidence submitted by the treating source, viewed as a whole, is complete. Walters, 2013

U.S. Dist. LEXIS 58711, *19. Moreover, the ALJ is not obligated to re-contact treating physicians when the record contains no critical gaps and there are medical opinions from different sources concerning the plaintiff's impairments. Id. The ALJ has a duty to supplement a record which contains only "sparse notes" and a short "wholly conclusory" assessment. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

In Pena v. Astrue, the record contained various medical reports from a period of over three years, as well as various educational reports, therapist reports, and formal and informal testing results. Pena v. Astrue, No. 11-CV-1787 (KAM), 2013 U.S. Dist. LEXIS 41516, at *54 (E.D.N.Y. Mar. 25, 2013). There was a 15-month gap in the medical records. Id. at *55. However, the ALJ developed a record of medical and non-medical evidence sufficient to determine disability. Id. at *56. The court found that the ALJ adequately developed the record relating to the plaintiff's mental impairments and ADHD. Id.

In the present case, the record contains various medical reports from the alleged onset of disability, educational reports, therapist reports, and formal IQ testing results. There are no gaps in the record. From B.R.'s initial ER visit on June 2, 2010, he saw Dr. McCoy in June 2010, August 2010, October 2010, and January 2011; Dr. Fretz in July 2010, October 2010, August 2010, and August 2011; and the teacher questionnaire was filled out by Ms. Ellis in November 2011. Further, there were progress notes from Lifetime Health in March 2012 and May 2012. The longest gap in the medical record is only the period of seven months from January 2011 to August 2011.

Additionally, the ALJ requested information from B.R.'s school on several occasions. In July 2010, the ALJ contacted the Buffalo Board of Education, but no medical records were available. In July 2010, the ALJ contacted the B.E.S.T. School #6, but it did not respond to the

requests for information. The ALJ also contacted Plaintiff in August 2010, to verify if B.R. was attending summer school, or was in special education. Again in August 2011, the ALJ re-contacted Buffalo Public Schools for records. Because the ALJ provided a complete record, and there were no gaps in the record, this Court concludes that the ALJ properly developed the record.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Commissioner's motion for judgment on the pleadings (Docket No. 9) be granted in whole, and that Plaintiff's motion (Docket No. 12) for similar relief be denied in whole.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report and Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

**Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s Hugh B. Scott_

HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: August 6, 2014